1   ANDREW L. PACKARD (Cal. Bar No. 168690)
    MICHAEL P. LYNES (Cal. Bar No. 230462)
2   Law Offices of Andrew L. Packard
    319 Pleasant Street
3   Petaluma, CA  94952
    Tel:  (707) 763-7227
4   Fax:  (707) 763-9227
    E-mail:  andrew@packardlawoffices.com
5
    MICHAEL R. LOZEAU (Cal. Bar No. 142893)
6   Law Office of Michael R. Lozeau
    1516 Oak Street, Suite 216
7   Alameda, CA 94501
    Tel: (510) 749-9102
8   Fax: (510) 749-9103
    E-mail: mrlozeau@lozeaulaw.com
9
    Attorneys for Plaintiff CALIFORNIA
10  SPORTFISHING PROTECTION ALLIANCE

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13  CALIFORNIA SPORTFISHING            Case No. 07-C-02438-CRB
    PROTECTION ALLIANCE, a non profit
14  corporation,                       **STIPULATION FOR APPROVAL OF**
                                       **CONSENT AGREEMENT AND**
15              Plaintiff,             **DISMISSAL OF PLAINTIFFS' CLAIMS**
                                       **WITH PREJUDICE;**
        vs.                            ~~**[PROPOSED]**~~ **ORDER APPROVING**
16                                     **CONSENT AGREEMENT AND**
    ALLIANCE RECYCLING, INC.,          **GRANTING DISMISSAL WITH**
17                                     **PREJUDICE [FRCP 41(a)(2)]**
                Defendant.
18

19

20          WHEREAS, on February 2, 2007, Plaintiff California Sportfishing Protection Alliance

21  ("CSPA") provided Defendant Alliance Recycling, Inc. ("Alliance") with a Notice of Violations

22  and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365.

23          WHEREAS, on May 7, 2007, CSPA filed its Complaint against Alliance in this court,

24  *California Sportfishing Protection Alliance v. Alliance Recycling, Inc.*, Case No. 07-C-02438-

25  CRB.  Said Complaint incorporates by reference all of the allegations contained in CSPA's

26  Notice.

27          WHEREAS, CSPA and Alliance (collectively "Parties"), through their authorized

28

STIPULATION FOR APPROVAL OF CONSENT AGREEMENT       CASE NO. 07-C-02438-CRB
AND DISMISSAL WITH PREJUDICE;
[PROPOSED] ORDER                    1

1  representatives and without either adjudication of CSPA's claims or admission by Alliance of any

2  alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the

3  allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and

4  uncertainties of further litigation.  A copy of the [Proposed] Consent Agreement entered into by

5  and between CSPA and Alliance is attached hereto as Exhibit A and incorporated by reference.

6      WHEREAS, as required by 33 U.S.C. § 1365(c)(3), CSPA submitted the Complaint and

7  Settlement Agreement via certified mail, return receipt requested, to the U.S. Environmental

8  Protection Agency and the U.S. Department of Justice, and the 45-day review period set forth at

9  40 C.F.R. § 135.5 has completed.

10     NOW THEREFORE, IT IS HEREBY STIPULATED and agreed, by and between the

11  parties:

12     1.      That the Court be requested to approve the Consent Agreement attached hereto as

13  Exhibit A and enter judgment in accordance therewith; and

14     2.      That CSPA's claims, as set forth in the Notice and Complaint, be dismissed with

15  prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  The Parties respectfully request

16  an order from this Court dismissing such claims with prejudice.  In accordance with paragraph 19

17  of the Consent Agreement, the Parties also request that this Court retain and have jurisdiction

18  over the Parties with respect to disputes arising under the Consent Agreement.

19  Dated: 7/6/07              LAW OFFICES OF ANDREW L. PACKARD

20

21                    By:

22                        Michael P. Lynes
                          Attorneys for California Sportfishing Protection
23                        Alliance

24  Dated:              FARELLA BRAUN + MARTEL

25

26                    By:
                          Paul P. Spaulding, III
27                        Attorneys for Alliance Recycling, Inc.

28

STIPULATION FOR APPROVAL OF CONSENT AGREEMENT          CASE NO. 07-C-02438-CRB
AND DISMISSAL WITH PREJUDICE;
[PROPOSED] ORDER              2

1   representatives and without either adjudication of CSPA's claims or admission by Alliance of any

2   alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the

3   allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and

4   uncertainties of further litigation.  A copy of the [Proposed] Consent Agreement entered into by

5   and between CSPA and Alliance is attached hereto as Exhibit A and incorporated by reference.

6       WHEREAS, as required by 33 U.S.C. § 1365(c)(3), CSPA submitted the Complaint and

7   Settlement Agreement via certified mail, return receipt requested, to the U.S. Environmental

8   Protection Agency and the U.S. Department of Justice, and the 45-day review period set forth at

9   40 C.F.R. § 135.5 has completed.

10      NOW THEREFORE, IT IS HEREBY STIPULATED and agreed, by and between the

11  parties:

12      1.    That the Court be requested to approve the Consent Agreement attached hereto as

13  Exhibit A and enter judgment in accordance therewith; and

14      2.    That CSPA's claims, as set forth in the Notice and Complaint, be dismissed with

15  prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  The Parties respectfully request

16  an order from this Court dismissing such claims with prejudice.  In accordance with paragraph 19

17  of the Consent Agreement, the Parties also request that this Court retain and have jurisdiction

18  over the Parties with respect to disputes arising under the Consent Agreement.

19  Dated:                          LAW OFFICES OF ANDREW L. PACKARD

20

21                                  By:  _____

22                                       Michael P. Lynes
                                         Attorneys for California Sportfishing Protection
                                         Alliance
23

24  Dated: 7/6/2007                 FARELLA BRAUN + MARTEL

25

26                                  By:  _____
                                         Paul P. Spaulding, III
27                                       Attorneys for Alliance Recycling, Inc.

28  _____

STIPULATION FOR APPROVAL OF CONSENT AGREEMENT          CASE NO. 07-C-02438-CRB
AND DISMISSAL WITH PREJUDICE;
[PROPOSED] ORDER                          2

1

**[PROPOSED]** ORDER

2      WHEREAS, the Parties have consented to entry of the foregoing Consent Agreement and

3  requested the Court's approval and entry thereof; and

4      WHEREAS, pursuant to 33 U.S.C. § 1365, Plaintiff California Sportfishing Protection

5  Alliance ("CSPA") has served the complaint herein on the United States Attorney General and

6  the Administrator of the United States Environmental Protection Agency;

7      WHEREAS, pursuant to 33 U.S.C. § 1365(c)(3), at least 45 days have elapsed since the

8  United States Attorney General was served on May 7, 2007, and the Administrator of the United

9  States Environmental Protection Agency was served on May 7, 2007 with copies of the Consent

10  Agreement; and

11      WHEREAS, the Court has reviewed the Consent Agreement, and fully considered all

12  comments received thereon to date from the Parties hereto, the United States Attorney General

13  and the United States Environmental Protection Agency; and

14      WHEREAS, the Court has fully considered the Parties' request to enter this Consent

15  Agreement as an order; and

16      WHEREAS, the Court finds the Consent Agreement to be: (1) fair, adequate and

17  reasonable; (2) consistent with applicable laws; and (3) protective of the public interest; and

18      WHEREAS, good cause appearing therefor,

19      1.      THIS CONSENT AGREEMENT IS HEREBY APPROVED AND JUDGMENT

20  IS ENTERED IN ACCORDANCE THEREWITH;

21      2.      Plaintiff California Sportfishing Protection Alliance's claims against Alliance

22  Recycling, Inc. as set forth in the Notice and Complaint filed in Case No. 07-C-02438-CRB, are

23  hereby dismissed with prejudice; and

24  //

25  //

26  //

27  //

28

STIPULATION FOR APPROVAL OF CONSENT AGREEMENT          CASE NO. 07-C-02438-CRB
AND DISMISSAL WITH PREJUDICE;
[PROPOSED] ORDER          3

1    3.    This Court shall retain and have jurisdiction over CSPA and Alliance Recycling,

2  Inc. with respect to implementation of the terms of their Consent Agreement and the resolution of

3  any disputes that may arise under that Consent Agreement attached to the parties' Stipulation to

4  Dismiss as Exhibit A.

5    IT IS SO ORDERED.

6    NORTHERN DISTRICT COURT OF CALIFORNIA

7

8  Dated: __July 10, 2007_____    _____

United States District Court Judge



# EXHIBIT A

ANDREW L. PACKARD (Bar No. 168690)
MICHAEL P. LYNES (Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (707) 763-9229
E-mail: andrew@packardlawoffices.com

MICHAEL R. LOZEAU (Bar No. 142893)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103
E-mail: mrlozeau@lozeaulaw.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ALLIANCE RECYCLING, INC., a corporation,<br><br>    Defendant. | Case No. C-07-2438-CRB<br><br>**[PROPOSED] CONSENT AGREEMENT**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

## RECITALS

**WHEREAS**, Plaintiff California Sportfishing Protection Alliance ("CSPA") is a non-profit

public benefit corporation dedicated to the preservation, protection, and defense of the environment,

wildlife, and natural resources of California's waters;

1     **WHEREAS**, Alliance Recycling Inc., doing business as Alliance Metals ("Alliance") is a

2   corporation organized under the laws of the State of California that operates a metal, glass and plastic

3   recycling collection and processing center on a ¾-acre site located at 3426 Peralta Ave, Oakland,

4   California ("Facility");

5     **WHEREAS,** CSPA and Alliance shall sometimes be referred to herein individually as "Party"

6   and collectively as "Parties;"

7     **WHEREAS**, approximately 100% of the Facility is paved or covered by structures.  Storm

8   water from a portion of the Facility drains to the storm drains of the City of Oakland;

9     **WHEREAS**, the Federal Water Pollution Control Act, also known as the Clean Water Act,

10  prohibits persons from discharging pollutants from point sources to waters of the United States

11  without obtaining a National Pollutant Discharge Elimination System ("NPDES") permit.  33 U.S.C.

12  §§ 1311(a), 1342;

13    **WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant

14  to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001

15  [State Water Resources Control Board], Water Quality Order No. 91-13-DWQ (as amended by Water

16  Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section 402 of the Clean Water Act,

17  33 U.S.C. § 1342, and the Porter-Cologne Water Quality Control Act, California Water Code

18  §§ 13000, *et seq.* (hereinafter "General Permit");

19    **WHEREAS**, on February 2, 2007, CSPA provided a written notice of alleged violations of the

20  CWA and the General Permit by Alliance and notified Alliance therein of CSPA's intention to file suit

21  against Alliance ("CSPA Notice") to the Administrator of the United States Environmental Protection

22  Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water

23  Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality

24  Control Board, Central Valley Region ("Regional Board"); and to Alliance, pursuant to Section 505 of

25  the Clean Water Act, 33 U.S.C. § 1365.  A true and correct copy of the CSPA Notice is attached hereto

26  as Exhibit A;

27

**WHEREAS,** subsequent to the CSPA Notice, CSPA was provided an opportunity to inspect the Facility, including a review of Alliance's existing BMPs and SWPPP;

**WHEREAS,** CSPA is filing a complaint ("Complaint") against Alliance in the United States District Court, Northern District of California;

**WHEREAS,** Alliance denies CSPA's allegations that it has violated the Clean Water Act, the Porter-Cologne Water Quality Act and/or the General Permit and denies that it has any liability whatsoever to CSPA. The Parties agree that nothing in this Consent Agreement shall be construed as, and Alliance does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Agreement be construed as an admission by Alliance of any fact, finding, conclusion, issue of law, or violation of law;

**WHEREAS,** for purposes of this Consent Agreement, the Parties stipulate that venue is proper in this Court, and Alliance does not contest the exercise of jurisdiction by this Court to enter this Consent Agreement;

**WHEREAS,** this Consent Agreement shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c), and all of the other procedures in 33 U.S.C. § 1365 associated with approval of consent agreements shall be followed; and the Consent Agreement shall thereafter be submitted for approval by the Court, the date of which approval shall be referred to herein as the "Court Approval Date;"

**WHEREAS,** at the time the Consent Agreement is submitted for approval to the United States District Court, CSPA shall request a dismissal of the Complaint with prejudice and the Parties shall stipulate and request that the Court retain jurisdiction for the enforcement of this Consent Agreement as provided herein;

**AND WHEREAS,** the Parties agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation.

## AGREEMENT

**NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

I.    **COMMITMENTS OF ALLIANCE**

1.    **Facility Operation.**  Alliance shall continue to implement all measures, or shall identify and implement additional measures, as may be needed to operate the Facility in full compliance with the requirements of the General Permit and Clean Water Act, and shall continue to operate the Facility in full compliance with the requirements of the General Permit and Clean Water Act during the term of this Consent Agreement.

2.    **Immediate Improvement to Best Management Practices at the Facility.**  Within thirty (30) days of the Court Approval Date, to the extent not already implemented, Alliance shall formally amend its Storm Water Pollution Prevention Plan ("SWPPP") to include the requirements that:  (a) Alliance shall clean paved portions of the Facility using an industrial steam cleaner at least once each year prior to the first significant forecasted rain event of a Wet Season; and (b) Alliance shall maintain the Facility's storm water collection and discharge system by cleaning the grease traps and grated collection trenches at least every thirty (30) days during the Wet Season.  The cleaning shall consist of removing accumulated material and replacing the oil pillows and booms.

3.    **Additional Best Management Practice at the Facility.**  On or before October 1, 2007, Alliance shall repair the paved surfaces exposed to storm water at the Facility by either repaving over or using a concrete repair material to repair large holes or, where practicable, filling in cracks and seams with a joint filler material.

4.    **Storm Water Sampling**.  Alliance shall take at least two storm water samples from each discharge point at the Facility during the 2007-2008 Wet Season.  Alliance shall collect these additional samples during storm events that meet each of the criteria defined in Section B.5 of the General Permit ("Qualifying Storm Events").  All storm water samples collected at the Facility pursuant to this Agreement shall be analyzed by a laboratory accredited by the State of California.  The

storm water samples shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded. Analytical methods used by the laboratory shall be adequate to detect the individual constituents at or below the applicable values. After February 1, 2008, if Alliance has yet to collect two samples from Qualifying Storm Events, Alliance is authorized to collect samples from storm events that are non-qualifying to the extent they are not preceded by three (3) working days during which no storm water discharges have occurred ("Non-qualifying Storm Events"). Samples from Non-qualifying Storm Events may be used to satisfy the requirements of Paragraph 4.

5. **Sampling Parameters.** In addition to testing its storm water samples for all of the parameters for which it is currently sampling (pH, TSS, TOC or Oil and Grease, Specific Conductance, Total Aluminum, Total Copper, Total Iron, Total Lead and Total Zinc), Alliance agrees to test its storm water samples during the 2007-2008 Wet Season for Total Nickel.

6. **Review of Storm Water Sampling & Evaluation of BMPs.** Within thirty (30) days of receiving the final laboratory analysis for the first storm water sampling event at the Facility during the term of this Consent Agreement, Alliance shall provide CSPA with copies of the analysis. Within thirty (30) days of receiving the final laboratory analysis of the second storm water sampling event at the Facility during the term of this Consent Agreement, Alliance shall provide CSPA with a copy of the analysis and Alliance's written evaluation of its BMPs, including a schedule, if necessary, for the implementation of any additional BMPs and revision of the SWPPP.

7. **Inspections During the Term of this Agreement.** Alliance shall permit representatives of CSPA to perform one physical inspection (which may include confidential photographing of the Facility) during the 2007-2008 Wet Season, provided that all CSPA site visit participants execute Alliance's site access and confidentiality agreement. CSPA shall provide at least fourteen (14) days' advance notice of such physical inspection.

8. **Alliance's Communications with Regional and State Boards.** During the term of this Consent Agreement, Alliance shall promptly provide CSPA with copies of all documents submitted to, or received from, the Regional Board or the State Board concerning storm water discharges from the Facility, including but not limited to all documents and reports submitted to or

1    received from the Regional Board and/or State Board as required by the General Permit. Such

2    documents and reports shall be provided to CSPA pursuant to the Notice provision herein (except that

3    such documents may be sent by first-class mail only) and shall be sent contemporaneously with

4    Alliance's submission to such agency.

5        **9.    SWPPP Amendments.** Alliance shall provide CSPA with a copy of any other

6    amendments to the Facility SWPPP made during the term of the Consent Agreement within fourteen

7    (14) days of such amendment.

8        **10.    Group Monitoring.** Alliance is and has been a participant in the Metal Recyclers

9    Monitoring Group, and plans to continue to be a participant in this Group for the foreseeable future.

10    Nothing in this Consent Agreement shall be deemed to affect, reduce, eliminate or require this group

11    monitoring status or participation.

12    **II.    MITIGATION FEES AND COSTS**

13        **11.    Mitigation Payments.** As mitigation of the Clean Water Act, Porter-Cologne Water

14    Quality Act and General Permit claims alleged in the CSPA Notice and the Complaint, Alliance agrees

15    to pay the sum of $10,000 in ten equal monthly installments of $1,000 each to the Rose Foundation for

16    Communities and the Environment for projects relating to the reduction, prevention or mitigation of,

17    or research on, the effects of discharges of pollutants in storm water to the San Francisco Bay. None

18    of this monetary payment shall be used to fund litigation, direct regulatory advocacy or lobbying

19    activities against Alliance Recycling, Inc. The first payment shall be due on the tenth day of the month

20    following the Court Approval Date. Subsequent payments are due by the tenth day of each successive

21    month.

22        **12.    Attorneys' Fees and Costs.** Alliance agrees to reimburse CSPA in the amount of

23    $10,000 to defray CSPA's reasonable investigative, expert, consultant and attorneys' fees and costs,

24    and all other costs incurred as a result of investigating the activities at the Facility, preparing the CSPA

25    Notice, litigating and negotiating a resolution of this action in the public interest. Such payment shall

26    be made to the Law Offices of Andrew L. Packard Attorney Client Trust Account within thirty (30)

27    days after the Court Approval Date.

III.    **DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT**

    **13.    Dispute Resolution and Enforcement.**  If a dispute under this Consent Agreement arises, or if either Party believes that a breach of this Consent Decree has occurred, the Parties shall hold a meeting within thirty (30) days of receiving written notification from the other Party of a request for a meeting.  This notification shall explicitly state the nature, underlying facts and legal grounds for the dispute or alleged breach.  At this meeting, the Parties shall discuss the merits of the dispute and whether a violation has occurred, and they shall seek to develop a mutually agreed upon plan, including implementation dates, to resolve the alleged violation or dispute.  If the parties fail to meet and confer or if the meeting does not resolve the issue, and after at least seven days have elapsed since the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California, which shall retain jurisdiction over the action for the limited purposes of enforcement of the terms of this Consent Agreement.  The Parties shall be entitled to seek fees and costs incurred in any such meet and confer and/or motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provision, including that the Court shall award reasonable attorneys' fees and costs to Alliance if it prevails in the dispute and the Court concludes that CSPA's action to enforce the Consent Agreement was frivolous, unreasonable or without foundation.

IV.    **WAIVERS, RELEASES AND COVENANT NOT TO SUE**

    **14.    CSPA Waiver and Release of Alliance.**  Upon Court approval and entry of this Consent Agreement, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases and forever discharges Alliance (and its officers, directors, employees, shareholders, agents, attorneys, representatives, affiliated companies, parents, subsidiaries, predecessors, successors and assigns, past and present) from, and waives, all claims, whether known or unknown, anticipated or not anticipated, actual or contingent, suspected or unsuspected, for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any

1  other sum incurred or claimed or which could have been claimed in this legal action, or which was

2  alleged in the CSPA Notice, including but not limited to the alleged failure of Alliance to comply with

3  the Clean Water Act (33 U.S.C. §§ 1251, *et seq.*) and the Porter-Cologne Water Quality Control Act

4  (Water Code §§ 13000, *et seq.*), including the General Industrial Permit, at the Facility, up to the

5  Termination Date of this Consent Agreement as provided in Paragraph 21, except as specifically

6  provided for in Paragraph 13 of this Consent Agreement.  This release includes a release, and covenant

7  not to sue, for injunctive relief, damage, penalties, fines, sanctions, mitigation, fees (including fees of

8  attorneys, experts and others), costs, expenses or any other sum incurred or claimed or which could

9  have been claimed with respect to any Alliance activities at the Facility in alleged violation of the

10  Clean Water Act or the Porter-Cologne Water Quality Control Act, including the General Industrial

11  Permit or any successor General Permit, that may arise during the term of this Consent Agreement up

12  to its termination, except as specifically provided for in Paragraph 13 of this Consent Agreement.  All

13  of the above-referenced potential, actual or future claims shall hereafter be collectively referred to as

14  the "Released Claims."

15      **15.    Alliance's Waiver and Release of CSPA.**  Upon Court approval and entry of this

16  Consent Agreement, Alliance releases CSPA (and its officers, directors, employees, members, parents,

17  subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other

18  representative) from, and waives all claims which arise from or pertain to this legal action, including

19  all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum

20  incurred or claimed or which could have been claimed for matters associated with or related to this

21  Action, except as specifically provided for in Paragraph 13 of this Consent Agreement; provided,

22  however, the foregoing shall not apply to CSPA's obligations under the confidentiality agreement

23  between CSPA and Alliance.

24      **16.    Release of Unknown Claims.**  Alliance Recycling, Inc., on the one hand, and CSPA,

25  on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers,

26  agents, attorneys, representatives, and employees, on the other hand, acknowledge that they may

27  hereafter discover facts in addition to or different from those which they now know or believe to be

1    true with respect to the releases set forth in this Consent Agreement, and that they may have sustained

2    damages, costs or expenses that are presently unknown and that relate to the releases set forth in this

3    Consent Agreement. The Parties acknowledge, however, that they have negotiated, agreed upon, and

4    entered into this Consent Agreement in light of such possibilities. The Parties agree that the foregoing

5    releases shall be effective as a bar to any and all actions, attorneys' fees, damages, losses, civil

6    penalties, claims, liabilities and demands of whatever character, nature and kind, known or unknown,

7    suspected or unsuspected, hereinabove specified to be so barred. In furtherance of this intention, the

8    Parties waive any and all rights which they may have under state or federal statute or common law

9    principles that would otherwise limited the effect of this Consent Agreement to claims known or

10   suspected at the date on which the Parties hereto execute this Settlement Agreement. Specifically, the

11   Parties expressly waive any and all rights that they may have under Section 1542 of the California

12   Civil Code, which provides as follows:

13         A general release does not extend to claims which the creditor does not
      know or suspect to exist in his favor at the time of executing the release,
14         which if known to him must have materially affected his settlement with
      the debtor.

15

16   **17.    Covenant Not to Sue.** CSPA, on its own behalf and on behalf of its members,

17   subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees,

18   covenants and agrees that it will not at any time bring, encourage, participate in, cooperate in or

19   contribute money to any action, suit, counterclaim, third party complaint, appeal or proceeding against

20   Alliance seeking to pursue the Released Claims as defined in Paragraph 14 herein.

21   **18.    Complaint Dismissal.** CSPA will dismiss its Complaint with prejudice immediately

22   after the Court approves and enters the Consent Agreement. To implement this provision and to

23   ensure that the Court retains subject matter jurisdiction to enforce the Consent Agreement, the Parties

24   will file with the Court a proposed form of Stipulation and Order which shall provide: (A) for

25   dismissal of the Complaint and all claims therein with prejudice pursuant to Federal Rule of Civil

26   Procedure 41(a)(2); and (B) that the Court shall retain and have jurisdiction over the Parties with

27   respect to enforcement of the Consent Agreement.

1    **19.    Retention of Federal Jurisdiction.**  The United States District Court for the

2    Northern District of California shall retain and will have jurisdiction over the Parties to this Consent

3    Agreement for the resolution of any disputes that may arise under this Consent Agreement.  Each

4    Party, on behalf of itself and its successors or assigns, expressly consents to the jurisdiction of the

5    United States District Court for the Northern District of California for these purposes.  Any Party

6    claiming that the other Party has failed to comply, after attempting to work out disputes informally

7    utilizing the mechanism in Paragraph 13 may, by motion, ask the Court approving this Consent

8    Agreement to enforce the Consent Agreement obligations through declaratory and/or injunctive relief

9    only.  The Party bringing the motion shall carry the burden of proof to demonstrate that the other Party

10   is in breach of its Consent Agreement obligations.

11   **20.    No Admissions.**  The Parties enter into this Consent Agreement for the purpose of

12   avoiding prolonged and costly litigation.  Nothing in this Consent Agreement shall be construed as,

13   and Alliance expressly does not intend to imply, any admission as to any fact, finding, issue of law, or

14   violation of law, nor shall compliance with this Consent Agreement constitute or be construed as an

15   admission by Alliance of any fact, finding, conclusion, issue of law, or violation of law.  However, this

16   paragraph shall not diminish or otherwise affect the obligations, responsibilities, and duties of the

17   Parties under this Consent Agreement.

18   **V.    MISCELLANEOUS PROVISIONS**

19   **21.    Termination Date.**  The Agreement shall terminate on September 30, 2008.

20   **22.    Partial Invalidity.**  In the event that any of the provisions of this Consent Agreement

21   is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely

22   affected.

23   **23.    Construction of Agreement.**  The language in all parts of this Consent Agreement,

24   unless otherwise stated, shall be construed according to its plain and ordinary meaning.

25   **24.    Authorization.**  The undersigned are authorized to execute this Consent Agreement

26   on behalf of their respective parties and have read, understood and agreed to all of the terms and

27   conditions of this Consent Agreement.

25.    **Integration Clause.**  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Agreement are contained herein.

26.    **Notice Provision.**  Any notices or other documents required or provided for by this Consent Agreement or related thereto that are to be provided to either of the Parties pursuant to this Consent Agreement shall be sent by both facsimile or e-mail transmission and first-class mail to each of the following representatives of the Parties.  Notice shall be deemed to be given and received on the date received by facsimile or e-mail transmission, if such notice is given by facsimile or e-mail transmission to all recipients between 9:00 a.m. and 5:00 p.m. Pacific Standard Time ("PST") or Pacific Daylight Time ("PDT"), whichever is applicable, on a business weekday.  If notice is given by facsimile or e-mail transmission after 5:00 p.m. PST or PDT on a weekday or on a weekend day, notice shall be deemed received on the next succeeding weekday.  Notices or documents for CSPA shall be sent to:

    Bill Jennings, Executive Director
    California Sportfishing Protection Alliance
    3536 Rainier Avenue
    Stockton, CA 95204
    DeltaKeep@aol.com
    Fax: (209) 464-1028

    With a copy sent to:

    Andrew L. Packard
    Law Offices of Andrew L. Packard
    319 Pleasant Street
    Petaluma, CA  94952
    andrew@packardlawoffices.com
    Fax: (707) 763-9227

    Notices or documents for Alliance shall be sent to:

    Jerome P. Anast, President
    Alliance Recycling, Inc.
    3426 Peralta Street
    Oakland, CA  94608
    arecycle@pacbell.net
    Fax:  (415) 723-7566

    **With a copy sent to:**

1
2
3

Paul P. Spaulding, III
Farella Braun & Martel
235 Montgomery Street
San Francisco, CA 94104
sspaulding@fbm.com
Fax: (415) 954-4480

4
5

Each party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

6
7

    27.    **Signatures.**  Signatures of the Parties transmitted by facsimile shall be deemed binding.

8
9
10
11
12
13
14

    28.    **Force Majeure.**  No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

15
16
17
18
19

    29.    **Best Efforts.**  If for any reason the Court should decline to approve this Consent Agreement in the exact form presented, the Parties shall use their best efforts to work together to modify the Consent Agreement within thirty (30) days so that it is acceptable to the Parties and the Court. If the Parties are unable to modify this Consent Agreement in a mutually acceptable manner, this Consent Agreement shall be immediately null and void.

20
21

    30.    **Court Approval.**  The settling Parties hereto enter into this Consent Agreement, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

22
23
24
25
26
27

1   Dated: April ____, 2007          CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

2

3                                    By:   _____
4
                                           Bill Jennings
5                                          Executive Director

6

7   Dated: April **25** , 2007       ALLIANCE RECYCLING, INC.

8

9                                    By: _____
10                                        Jay Anast
                                          President
11

12  APPROVED AS TO FORM:
13
    Dated: April ____, 2007          LAW OFFICES OF ANDREW L. PACKARD
14

15

16                                   By:   _____
                                           Michael P. Lynes
17                                   Attorneys for California Sportfishing Protection Alliance

18

19  Dated: April **25**, 2007        FARELLA BRAUN + MARTEL
20

21
                                     By: _____
22                                       Paul P. Spaulding, III
23                                   Attorneys for Alliance Recycling, Inc.

24

25

26

27

1
2

Dated: April 30, 2007          CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

3
4                                  By: _____
                                       Bill Jennings
5                                      Executive Director

6

7    Dated: April ____, 2007        ALLIANCE RECYCLING, INC.

8
9                                  By: _____
10                                     Jay Anast
                                       President
11

12   APPROVED AS TO FORM:

13   Dated: May 7, 2007            LAW OFFICES OF ANDREW L. PACKARD
14

15
16                                 By: _____
                                       Michael P. Lynes
17                                 Attorneys for California Sportfishing Protection Alliance

18

19   Dated: April ____, 2007        FARELLA BRAUN + MARTEL
20

21
22                                 By: _____
                                       Paul P. Spaulding, III
23                                 Attorneys for Alliance Recycling, Inc.

24

25

26

27

[PROPOSED] CONSENT AGREEMENT                13              Case No. C-07-2438-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**<u>EXHIBIT A</u>**

24
25
26
27

# California Sportfishing Protection Alliance
## *"An Advocate for Fisheries, Habitat and Water Quality"*

February 2, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Jerome Anast
Alliance Recycling, Inc.
3426 Peralta Street
Oakland, CA 94608

Rena Ricles
Agent of Service of Process, Alliance Recyclers, Inc.
1970 Broadway Street, Suite 1200
Oakland, CA 94612

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water
          Pollution Control Act**

Dear Sir:

I am writing on behalf of the California Sportfishing Protection Alliance
("CSPA") in regard to violations of the Clean Water Act ("the Act") occurring at
Alliance Recycling, Inc's facility located at 3426 Peralta Street, Oakland, California ("the
Facility") and operating  under the name "Alliance Recycling."  The WDID identification
number for the Facility is 201S012241.  CSPA is a non-profit public benefit corporation
dedicated to the preservation, protection, and defense of the environment, wildlife and
natural resources of the San Francisco Bay and other California waters.  This letter is
being sent to you as the responsible owners, officers, or operators of Alliance Recycling,
Inc. (hereafter "Alliance Recycling" or "you").

This letter addresses Alliance Recycling's unlawful discharges of pollutants from
the Facility to the City of Oakland's storm drain system, which discharges into the San
Francisco Bay.  This letter addresses ongoing violations of the substantive and procedural
requirements of the Clean Water Act and National Pollutant Discharge Elimination
System ("NPDES") General Industrial Storm Water Permit No. CAS000001, State Water
Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order
No. 97-03-DWQ ("General Industrial Storm Water Permit").

Section 505(b) of the Clean Water Act provides that sixty (60) days prior to the
initiation of a civil action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen
must give notice of intent to file suit.  Notice must be given to the alleged violator, the

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 2 of 11

U.S. Environmental Protection Agency ("the EPA"), and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violation and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, Alliance Recycling is hereby placed on formal notice by CSPA that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, CSPA intends to file suit in federal court against Alliance Recycling Industries, Inc. under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the Clean Water Act and the General Industrial Storm Water Permit. These violations are described more fully below.

## I.    Background.

On June 6, 1997, Alliance Recycling submitted its notice of intent to comply with the terms of the General Industrial Storm Water Permit. Based on CSPA's review of available documents, the Facility is classified under Standard Industrial Classification Code 5093 ("Scrap & Waste Materials. The Facility collects and discharges storm water from its 8,000 square-foot industrial site to the City of Oakland's storm drain system, which discharges into the San Francisco Bay.

The San Francisco Regional Water Quality Control Board (the "Regional Board" or "Board") has established water quality standards for the San Francisco Bay, including the Oakland Estuary and the San Leandro Bay, in the "Water Quality Control Plan for the San Francisco Bay Basin," generally referred to as the Basin Plan. *See* http://www.swrcb.ca.gov/rwqcb2/basinplan.htm. The Basin Plan includes a narrative toxicity standard stating that "[a]ll waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms." *See* http://www.swrcb.ca.gov/rwqcb2/basinplan/web/BP_ CH3.html. The Basin Plan provides that "[t]he pH shall not be depressed below 6.5 nor raised above 8.5." *See id*. The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." *See id*. The Basin Plan provides that "[w]aters shall not contain biostimulatory substances in concentrations that promote aquatic growths to the extent that such growths cause nuisance or adversely affect beneficial uses." *See id*.

The Basin Plan establishes Marine Water Quality Objectives for the following pollutants: zinc – 0.081 mg/l (4-day average), 0.090 mg/l (1-hour average); cadmium – of 0.0093 mg/L (4-day average), 0.042 mg/L (1-hour average); lead – of 0.0081 mg/L (4 day average), 0.21 mg/L (1hour average).  *See* http://www.swrcb.ca.gov/rwqcb2/ basinplan/web/tab_3-3.html.

EPA has established secondary MCL, consumer acceptance limits of 0.02 mg/L for aluminum and 1.0 mg/L for iron. *See* http://www.epa.gov/safewater/mcl.html#mcls. The California Department of Health Services has also established MCLs of 0.2-1.0 mg/L

for aluminum and.0.3 mg/L for iron.  *See* California Code of Regulations, title 22, §§ 64431, 64449.  EPA has also established numeric water quality standards for priority toxic pollutants (at a hardness of 100 mg/l), including: 0.009 mg/L for copper, 1.0 mg/L for iron, and 0.1 mg/L for zinc.  *See* http://www.epa.gov/waterscience/criteria/wqcriteria. htm.

The General Industrial Storm Water Permit incorporates benchmark levels established by EPA as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").  The following benchmarks have been established for pollutants discharged by Alliance Recycling: aluminum – 0.750 mg/L; arsenic – 0.16854; cadmium – 0.159 mg/L; chemical oxygen demand – 120 mg/L; copper – 0.0636 mg/L; pH – 6.0-9.0;  iron – 1.0 mg/L; lead – 0.0816 mg/L; manganese – 1.0 mg/L; mercury – 0.0024 mg/L; nickel – 1.417 mg/L, total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; and zinc – 0.117 mg/L. The State Water Quality Control Board also recently proposed adding a benchmark level for specific conductance of 200 µmho/cm.

## II.    Pollutant Discharges in Violation of the NPDES Permit.

Alliance Recycling has violated and continues to violate the terms and conditions of the General Industrial Storm Water Permit.  Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Industrial Storm Water Permit. Discharge Prohibition A(1) of the General Industrial Storm Water Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States.  Discharge Prohibition A(2) of the General Industrial Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

Receiving Water Limitation C(1) of the General Industrial Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Industrial Storm Water Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

### A.    *Discharges in Violation of the Permit.*

Alliance Recycling has discharged and continues to discharge stormwater with levels of total suspended solids ("TSS"), pH, specific conductivity, oil and grease, chemical oxygen demand ("COD"), aluminum, copper, iron, lead, and zinc in violation of the General Industrial Storm Water Permit.  These high pollutant levels have been

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 4 of 11

documented during significant rain events, including rain events indicated in the table of rain data attached hereto as Exhibit A. Alliance Recycling's Annual Reports and Sampling and Analysis Results confirm discharges of specific pollutants and materials other than stormwater in violation of the Permit provisions listed above. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

Alliance Recycling has violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Industrial Storm Water Permit by discharging storm water with unacceptable levels of TSS, pH, specific conductivity, oil and grease, COD, aluminum, copper, iron, lead, and zinc on at least the following occasions:

| Date | Parameter | Concentration | Water Quality Objective |
|------|-----------|---------------|-------------------------|
| 12/25/2005 (# 1) | TSS | 633 mg/L | 100 mg/L |
| 12/25/2005 (# 1) | pH | 4.27 | 6.0 – 9.0; 6.5 – 8.5 |
| 12/25/2005 (# 1) | Specific Conductivity | 1400 µmho/cm | 200 µmho/cm |
| 12/25/2005 (# 1) | Oil & Grease | 110 mg/L | 15.0 mg/L |
| 12/25/2005 (# 1) | COD | 3000 mg/L | 110 mg/L |
| 12/25/2005 (# 1) | Aluminum | 8.02 mg/L | 0.75 mg/L |
| 12/25/2005 (# 1) | Copper | 1.16 mg/L | 0.0636 mg/L |
| 12/25/2005 (# 1) | Iron | 27.1 mg/L | 1.0 mg/L |
| 12/25/2005 (# 1) | Lead | 0.352 mg/L | 0.016 mg/L |
| 12/25/2005 (# 1) | Zinc | 2.97 mg/L | 0.117 mg/L |
| 12/25/2005 (# 2) | TSS | 350 mg/L | 100 mg/L |
| 12/25/2005 (# 2) | pH | 4.74 | 6.0 – 9.0; 6.5 – 8.5 |
| 12/25/2005 (# 2) | Specific Conductivity | 1570 µmho/cm | 200 µmho/cm |
| 12/25/2005 (# 2) | Oil & Grease | 60 | 15.0 mg/L |
| 12/25/2005 (# 2) | COD | 3200 | 110 mg/L |
| 12/25/2005 (# 2) | Aluminum | 6.25 mg/L | 0.75 mg/L |
| 12/25/2005 (# 2) | Copper | 0.325 mg/L | 0.0636 mg/L |
| 12/25/2005 (# 2) | Iron | 32.2 mg/L | 1.0 mg/L |
| 12/25/2005 (# 2) | Lead | 1.57 mg/L | 0.016 mg/L |
| 12/25/2005 (# 2) | Zinc | 3.42 | 0.117 mg/L |
| 12/25/2005 (# 3) | TSS | 480 mg/L | 100 mg/L |
| 12/25/2005 (# 3) | pH | 4.89 | 6.0 – 9.0; 6.5 – 8.5 |
| 12/25/2005 (# 3) | Specific Conductivity | 2480 µmho/cm | 200 µmho/cm |
| 12/25/2005 (# 3) | Oil & Grease | 75 mg/L | 15.0 mg/L |
| 12/25/2005 (# 3) | COD | 5000 mg/L | 110 mg/L |
| 12/25/2005 (# 3) | Aluminum | 18.4 mg/L | 0.75 mg/L |

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 5 of 11

| 12/25/2005 (# 3) | Copper | 0.462 mg/L | 0.0636 mg/L |
|---|---|---|---|
| 12/25/2005 (# 3) | Iron | 76.2 mg/L | 1.0 mg/L |
| 12/25/2005 (# 3) | Lead | 0.202 mg/L | 0.016 mg/L |
| 12/25/2005 (# 3) | Zinc | 5.12 mg/L | 0.117 mg/L |
| 2/12/2003 (# 1) | TSS | 1110 mg/L | 100 mg/L |
| 2/12/2003 (# 1) | Specific Conductivity | 1259 µmho/cm | 200 µmho/cm |
| 2/12/2003 (# 1) | Oil & Grease | 180 mg/L | 15 mg/L |
| 2/12/2003 (# 1) | COD | 9100 mg/L | |
| 2/12/2003 (# 1) | Aluminum | 13.8 mg/L | 0.75 mg/L |
| 2/12/2003 (# 1) | Copper | 0.675 mg/L | 0.0636 mg/L |
| 2/12/2003 (# 1) | Iron | 58.5 mg/L | 1.0 mg/L |
| 2/12/2003 (# 1) | Lead | 0.259 mg/L | 0.0816 mg/L |
| 2/12/2003 (# 1) | Zinc | 3.06 mg/L | 0.117 mg/L |
| 2/12/2003 (# 2) | TSS | 1380 mg/L | 100 mg/L |
| 2/12/2003 (# 2) | pH | 6.15 | 6.0 – 9.0; 6.5 – 8.5 |
| 2/12/2003 (# 2) | Specific Conductivity | 1400 µmho/cm | 200 µmho/cm |
| 2/12/2003 (# 2) | Oil & Grease | 220 mg/L | 15 mg/L |
| 2/12/2003 (# 2) | COD | 11,000 mg/L | |
| 2/12/2003 (# 2) | Aluminum | 13.9 mg/L | 0.75 mg/L |
| 2/12/2003 (# 2) | Copper | 0.816 mg/L | |
| 2/12/2003 (# 2) | Iron | 56.8 mg/L | 1.0 mg/L |
| 2/12/2003 (# 2) | Lead | 0.466 mg/L | |
| 2/12/2003 (# 2) | Zinc | 5.04 mg/L | 0.117 mg/L |
| 2/12/2003 (# 3) | TSS | 1400 | 100 mg/L |
| 2/12/2003 (# 3) | pH | 6.41 | 6.0 – 9.0; 6.5 – 8.5 |
| 2/12/2003 (# 3) | Specific Conductivity | 920 µmho/cm | 200 µmho/cm |
| 2/12/2003 (# 3) | Oil & Grease | 190 mg/L | 15 mg/L |
| 2/12/2003 (# 3) | COD | 6700 mg/L | |
| 2/12/2003 (# 3) | Aluminum | 18.6 mg/L | 0.75 mg/L |
| 2/12/2003 (# 3) | Copper | 0.492 mg/L | |
| 2/12/2003 (# 3) | Iron | 63.8 mg/L | 1.0 mg/L |
| 2/12/2003 (# 3) | Lead | 0.356 mg/L | |
| 2/12/2003 (# 3) | Zinc | 5.13 mg/L | 0.117 mg/L |

Alliance Recycling's Annual Reports confirm that Alliance Recycling has known that its stormwater contains the above-listed pollutants at levels exceeding EPA Benchmarks and other water quality criteria since prior to February 2, 2002. CSPA alleges that such violations also have occurred and will occur on other rain dates, including during every significant rain event that has occurred since at least February 2, 2002, and that will occur at the Facility subsequent to the date of this Notice of Violation and Intent to File Suit. Attachment A, attached hereto, sets forth specific rain dates on

which CSPA alleges that Alliance Recycling has discharged storm water containing impermissible levels of TSS, pH, specific conductivity, oil and grease, COD, aluminum, arsenic, cadmium, chromium, copper, iron, lead, manganese, mercury, nickel, zinc and other pollutants in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Industrial Storm Water Permit.

These unlawful discharges from the Facility are ongoing.  Each discharge of stormwater containing pollutants at unacceptable levels from the Facility constitutes a separate violation of the General Industrial Storm Water Permit and the Act.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Alliance Recycling is subject to penalties for violations of the General Industrial Storm Water Permit and the Act since February 2, 2002.

**B.      *Failure to Develop and Implement an Adequate Storm Water Monitoring Plan***

Section B(5)(a) of the General Industrial Storm Water Permit requires that dischargers "shall collect storm water samples during the first hour of discharge from (1) the first storm event of the wet season, and (2) at least one other storm event in the wet season.  All storm water discharge locations shall be sampled."  (emphasis added) Section B(5)(c)(i) further requires that the samples shall be analyzed for total suspended solids, pH, specific conductance, and total organic carbon.  Oil and grease may be substituted for total organic carbon.  Section B(5)(c)(ii) requires that "samples shall be analyzed for . . . [t]oxic chemicals and other pollutants that are likely to be present in storm water discharges in significant quantities."

Alliance Recycling is a member of the Metal Recyclers Monitoring Group ("MRMG").  Pursuant to Section B(15) of the of the General Permit, Alliance Recycling must "collect and analyze samples from at least two storm events in accordance with Section B.5. over the five-year period of this General Permit."  According to documents filed with the Regional Board and the MRMG, Alliance Recycling has failed to comply with Section B(5)(a) of the General Industrial Storm Water Permit by failing to collect storm water samples during the first hour of discharge from the first storm event of the wet season and from at least one other storm event per year during each of the wet seasons since the 2000-2001 wet season.  Alliance Recycling also violated Section B(5) by failing to collect storm water samples from all storm water discharge locations at the Facility in each of the years it was required to sample.  Alliance Recycling failed to collect and analyze samples from at least two storm events during a given wet season during the past five years.  Alliance Recycling also failed to conduct visual observations of every discharge point at the Facility at least once per month during each wet season since the 2000-2001 wet season, as required by the General Permit.

Alliance Recycling has also failed to analyze its storm water samples for all chemicals and pollutants that are "likely to be present in storm water discharges in

significant quantities." See Section B(5)(c)(ii). CSPA is informed and believes that at least the following pollutants are "likely" to be present in Alliance Recycling's storm water discharges in significant quantities: arsenic, cadmium, chromium, manganese, mercury and nickel. Alliance Recycling's ongoing failure to analyze its storm water samples for these and other pollutants likely to be present in its storm water discharges constitutes ongoing violations of the Act.

Each of Alliance Recycling's failures to comply with these mandatory monitoring requirements constitutes an ongoing violation of the Act. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Alliance Recycling is subject to penalties for these violations of the General Industrial Storm Water Permit and the Act since February 2, 2002.

### C.    *Failure to Implement BAT and BCT*.

Effluent Limitation B(3) of the General Industrial Storm Water Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. BAT and BCT include both nonstructural and structural measures. General Industrial Storm Water Permit, Section A(8). CSPA's investigation indicates that Alliance Recycling has not implemented BAT and BCT at the Facility for its discharges of TSS, pH, specific conductivity, oil and grease, COD, aluminum, iron, lead, and zinc, and other pollutants in violation of Effluent Limitation B(3) of the General Industrial Storm Water Permit.

Alliance Recycling was required to have implemented BAT and BCT by no later than October 1, 1992. Alliance Recycling has been in continuous violation of the BAT and BCT requirements every day since October 1, 1992, and will continue to be in violation every day that Alliance Recycling fails to implement BAT and BCT. Alliance Recycling is subject to penalties for violations of the Order and the Act occurring since February 2, 2002.

### D.    *Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan*

Section A(1) and Provision E(2) of the General Industrial Storm Water Permit require dischargers of storm water associated with industrial activity to develop, implement an adequate SWPPP no later than October 1, 1992 and to continuously update the SWPPP and its implementation to reflect BAT and BCT storm water controls. Section A(1) and Provision E(2) requires dischargers who submitted an NOI pursuant to the Order to continue following their existing SWPPP and implement any necessary revisions to their SWPPP in a timely manner, but in any case, no later than August 1, 1997.

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 8 of 11

The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (General Industrial Storm Water Permit, Section A(2)). The SWPPP must also include BMPs that achieve BAT and BCT (Effluent Limitation B(3)). The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (General Industrial Storm Water Permit, Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby waterbodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (General Industrial Storm Water Permit, Section A(4)); a list of significant materials handled and stored at the site (General Industrial Storm Water Permit, Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur (General Industrial Storm Water Permit, Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (General Industrial Storm Water Permit, Section A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (General Industrial Storm Water Permit, Section A(9),(10)). Receiving Water Limitation C(3) of the Order requires that dischargers submit a report to the appropriate Regional Water Board that describes the BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce the discharge of any pollutants causing or contributing to the exceedence of water quality standards.

CSPA's investigation of the conditions at the Facility demonstrates that Alliance Recycling has been operating with an inadequately developed or implemented SWPPP in violation of the requirements set forth above. Alliance Recycling's own Annual Reports and sampling and analysis demonstrate the inadequacy of Alliance Metal's SWPPP. Despite having years of data that indicate that Alliance Metal's storm water discharges contain pollutants in excess of EPA Benchmarks and other water quality standards, Alliance Recycling has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary. Alliance Recycling has been in continuous violation of Section A(1) and Provision E(2) of the General Industrial Storm Water Permit every day since October 1, 1992, and will continue to be in violation every day that Alliance Recycling fails to develop and implement an effective SWPPP. Alliance Recycling is subject to penalties for violations of the Order and the Act occurring since February 2, 2002.

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 9 of 11

**E.    Failure to Address Discharges Contributing to Exceedances of Water Quality Standards.**

Receiving Water Limitation C(3) requires a discharger to prepare and submit a report to the Regional Board describing changes it will make to its current BMPs in order to prevent or reduce the discharge of any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  Once approved by the Regional Board, the additional BMPs must be incorporated into the Facility's SWPPP.  The report must be submitted to the Regional Board no later than 60-days from the date the discharger first learns that its discharge is causing or contributing to an exceedance of an applicable water quality standard.  Receiving Water Limitation C(4)(a). Section C(11)(d) of the Permit's Standard Provisions also requires dischargers to report any noncompliance.  *See also* Provision E(6).  Lastly, Section A(9) of the Permit requires an annual evaluation of storm water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities.

As indicated above, Alliance Recycling discharges storm water containing unacceptable levels of TSS, pH, specific conductivity, oil and grease, COD, aluminum, copper, iron, lead and zinc that are causing or contributing to exceedances of applicable water quality standards for the receiving waters.  For each of these pollutants, Alliance Recycling was required to submit a report pursuant to Receiving Water Limitation C(4)(a) within 60-days of becoming aware of levels in its storm water exceeding the EPA Benchmarks and applicable water quality standards.

Based on CSPA's review of available documents, Alliance Recycling was aware of high levels of many of these pollutants prior to February 2, 2002.  Yet, Alliance Recycling has never filed a timely report describing its noncompliance with the General Industrial Storm Water Permit in violation of Section C(11)(d).

Alliance Recycling has been in continuous violation of Receiving Water Limitation C(4)(a) and Sections C(11)(d) and A(9) of the General Industrial Storm Water Permit every day since at least February 2, 2002, and will continue to be in violation every day that Alliance Recycling fails to prepare and submit the requisite reports, receives approval from the Regional Board and amends its SWPPP to include approved BMPs.  Alliance Recycling is subject to penalties for violations of the General Industrial Storm Water Permit and the Act occurring since February 2, 2002.

**F.    Failure to File Timely, True and Correct Annual Reports.**

Section B(14) of the General Industrial Storm Water Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board.  The Annual Report must be signed and certified by an appropriate corporate officer.  General Industrial Storm Water Permit, Sections B(14),

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 10 of 11

C(9), (10).  Section A(9)(d) of the General Industrial Storm Water Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Industrial Storm Water Permit.  *See also* General Industrial Storm Water Permit, Sections C(9) and (10) and B(14).

CSPA's investigation indicates that Alliance Recycling has signed and submitted incomplete Annual Reports and purported to comply with the General Industrial Storm Water Permit despite significant noncompliance at the Facility.  Consequently, Alliance Recycling has violated Sections A(9)(d), B(14) and C(9) & (10) of the General Industrial Storm Water Permit every time Alliance Recycling submitted an incomplete or incorrect annual report that falsely certified compliance with the Act.  These violations are continuous and ongoing until Alliance Recycling submits a complete and correct Annual Report for each year that Alliance Recycling has been subject to the General Permit.  Alliance Recycling is subject to penalties for violations of Section (C) of the General Industrial Storm Water Permit and the Act occurring since February 2, 2002.

### III.    Persons Responsible for the Violations.

CSPA puts Alliance Recycling, Inc. on notice that it is the person responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Alliance Recycling on notice that it intends to include those persons in this action.

### IV.    Name and Address of Noticing Party.

Our name, address and telephone number is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Avenue
Stockton, CA 95204
(209) 464-5067

### V.    Counsel.

CSPA has retained legal counsel to represent it in this matter.  Please direct all communications to:

Andrew L. Packard
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
(707) 763-7227
Andrew@packardlawoffices.com

Michael R. Lozeau
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, California 94501
(510) 749-9102
mrlozeau@lozeaulaw.com

CSPA Notice of Violation and Intent To File Suit
February 2, 2007
Page 11 of 11

## VI.    Penalties.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Alliance Recycling to a penalty of up to $32,500 per day per violation for all violations occurring during the period commencing five years prior to the date of this Notice of Violations and Intent to File Suit.  In addition to civil penalties, CSPA will seek declaratory relief and injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)), permits prevailing parties to recover costs and fees, including attorneys' fees.

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the Act against Alliance Recycling and its agents for the above-referenced violations upon the expiration of the 60-day notice period.  However, during the 60-day notice period, we would be willing to discuss effective remedies for the violations noted in this letter.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Bill Jennings, Executive Director
California Sportfishing Protection Alliance

## SERVICE LIST

Steve Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Alberto Gonzalez, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Celeste Cantú, Executive Director
State Water Resources Control Board
1001 I Street Sacramento, CA 95814
P.O. Box 100
Sacramento, CA 95812-0100

Bruce H. Wolfe, Executive Officer II
San Francisco Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

Paul P. Spaulding
Farella Braun Martell LLP
235 Montgomery Street, 30th Floor
San Francisco, CA 94104

## ATTACHMENT A

Significant Rain Events, Alliance Recycling, Inc. (Oakland)
February 2, 2002 – February 2, 2007

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| February | 08 | 2002 | December | 27 | 2002 | April | 29 | 2003 |
| February | 07 | 2002 | December | 28 | 2002 | May | 02 | 2003 |
| February | 13 | 2002 | December | 29 | 2002 | May | 03 | 2003 |
| February | 16 | 2002 | December | 30 | 2002 | May | 06 | 2003 |
| February | 17 | 2002 | December | 31 | 2002 | May | 07 | 2003 |
| February | 18 | 2002 | January | 09 | 2003 | May | 08 | 2003 |
| February | 19 | 2002 | January | 10 | 2003 | May | 30 | 2003 |
| February | 20 | 2002 | January | 12 | 2003 | July | 24 | 2003 |
| February | 22 | 2002 | January | 20 | 2003 | September | 03 | 2003 |
| February | 23 | 2002 | January | 21 | 2003 | November | 02 | 2003 |
| March | 05 | 2002 | January | 22 | 2003 | November | 03 | 2003 |
| March | 06 | 2002 | January | 23 | 2003 | November | 06 | 2003 |
| March | 07 | 2002 | February | 11 | 2003 | November | 07 | 2003 |
| March | 09 | 2002 | February | 12 | 2003 | November | 08 | 2003 |
| March | 10 | 2002 | February | 13 | 2003 | November | 09 | 2003 |
| March | 17 | 2002 | February | 15 | 2003 | November | 14 | 2003 |
| March | 22 | 2002 | February | 16 | 2003 | November | 15 | 2003 |
| March | 23 | 2002 | February | 19 | 2003 | November | 17 | 2003 |
| April | 09 | 2002 | February | 25 | 2003 | November | 30 | 2003 |
| April | 16 | 2002 | February | 26 | 2003 | December | 01 | 2003 |
| April | 29 | 2002 | March | 13 | 2003 | December | 02 | 2003 |
| May | 19 | 2002 | March | 14 | 2003 | December | 04 | 2003 |
| May | 20 | 2002 | March | 15 | 2003 | December | 05 | 2003 |
| May | 21 | 2002 | March | 16 | 2003 | December | 06 | 2003 |
| June | 21 | 2002 | March | 17 | 2003 | December | 07 | 2003 |
| June | 22 | 2002 | March | 18 | 2003 | December | 09 | 2003 |
| August | 02 | 2002 | March | 19 | 2003 | December | 10 | 2003 |
| November | 07 | 2002 | March | 20 | 2003 | December | 12 | 2003 |
| November | 08 | 2002 | March | 23 | 2003 | December | 13 | 2003 |
| November | 10 | 2002 | March | 26 | 2003 | December | 14 | 2003 |
| December | 06 | 2002 | April | 01 | 2003 | December | 19 | 2003 |
| December | 09 | 2002 | April | 02 | 2003 | December | 20 | 2003 |
| December | 10 | 2002 | April | 03 | 2003 | December | 21 | 2003 |
| December | 13 | 2002 | April | 04 | 2003 | December | 23 | 2003 |
| December | 14 | 2002 | April | 12 | 2003 | December | 24 | 2003 |
| December | 15 | 2002 | April | 13 | 2003 | December | 25 | 2003 |
| December | 16 | 2002 | April | 14 | 2003 | December | 28 | 2003 |
| December | 17 | 2002 | April | 16 | 2003 | December | 29 | 2003 |
| December | 18 | 2002 | April | 21 | 2003 | January | 01 | 2004 |
| December | 19 | 2002 | April | 22 | 2003 | January | 02 | 2004 |
| December | 20 | 2002 | April | 24 | 2003 | January | 06 | 2004 |
| December | 21 | 2002 | April | 25 | 2003 | January | 08 | 2004 |
| December | 25 | 2002 | April | 27 | 2003 | January | 09 | 2004 |
| December | 26 | 2002 | April | 28 | 2003 | January | 14 | 2004 |

**ATTACHMENT A**

Significant Rain Events, Alliance Recycling, Inc. (Oakland)
February 2, 2002 – February 2, 2007

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| January | 23 | 2004 | December | 06 | 2004 | February | 21 | 2005 |
| January | 24 | 2004 | December | 07 | 2004 | February | 26 | 2005 |
| January | 26 | 2004 | December | 08 | 2004 | February | 27 | 2005 |
| January | 27 | 2004 | December | 10 | 2004 | February | 28 | 2005 |
| January | 30 | 2004 | December | 26 | 2004 | March | 01 | 2005 |
| February | 01 | 2004 | December | 27 | 2004 | March | 02 | 2005 |
| February | 02 | 2004 | December | 28 | 2004 | March | 03 | 2005 |
| February | 03 | 2004 | December | 29 | 2004 | March | 04 | 2005 |
| February | 06 | 2004 | December | 30 | 2004 | March | 09 | 2005 |
| February | 13 | 2004 | December | 31 | 2004 | March | 18 | 2005 |
| February | 15 | 2004 | January | 01 | 2005 | March | 19 | 2005 |
| February | 16 | 2004 | January | 02 | 2005 | March | 20 | 2005 |
| February | 17 | 2004 | January | 03 | 2005 | March | 21 | 2005 |
| February | 18 | 2004 | January | 04 | 2005 | March | 22 | 2005 |
| February | 20 | 2004 | January | 05 | 2005 | March | 23 | 2005 |
| February | 21 | 2004 | January | 06 | 2005 | March | 27 | 2005 |
| February | 22 | 2004 | January | 07 | 2005 | March | 28 | 2005 |
| February | 24 | 2004 | January | 08 | 2005 | March | 29 | 2005 |
| February | 25 | 2004 | January | 09 | 2005 | April | 03 | 2005 |
| February | 26 | 2004 | January | 10 | 2005 | April | 04 | 2005 |
| February | 27 | 2004 | January | 11 | 2005 | April | 07 | 2005 |
| March | 01 | 2004 | January | 12 | 2005 | April | 08 | 2005 |
| March | 25 | 2004 | January | 13 | 2005 | April | 22 | 2005 |
| March | 27 | 2004 | January | 16 | 2005 | April | 23 | 2005 |
| April | 18 | 2004 | January | 17 | 2005 | April | 27 | 2005 |
| April | 19 | 2004 | January | 18 | 2005 | April | 28 | 2005 |
| April | 20 | 2004 | January | 19 | 2005 | April | 29 | 2005 |
| April | 21 | 2004 | January | 20 | 2005 | May | 04 | 2005 |
| May | 28 | 2004 | January | 21 | 2005 | May | 05 | 2005 |
| August | 23 | 2004 | January | 22 | 2005 | May | 08 | 2005 |
| August | 24 | 2004 | January | 23 | 2005 | May | 09 | 2005 |
| September | 19 | 2004 | January | 24 | 2005 | May | 18 | 2005 |
| October | 17 | 2004 | January | 25 | 2005 | May | 19 | 2005 |
| October | 19 | 2004 | January | 26 | 2005 | June | 8 | 2005 |
| October | 20 | 2004 | January | 27 | 2005 | June | 09 | 2005 |
| October | 23 | 2004 | January | 28 | 2005 | June | 16 | 2005 |
| October | 25 | 2004 | February | 07 | 2005 | June | 17 | 2005 |
| October | 26 | 2004 | February | 11 | 2005 | June | 18 | 2005 |
| November | 03 | 2004 | February | 14 | 2005 | October | 14 | 2005 |
| November | 04 | 2004 | February | 15 | 2005 | October | 15 | 2005 |
| November | 09 | 2004 | February | 16 | 2005 | October | 26 | 2005 |
| November | 10 | 2004 | February | 17 | 2005 | October | 29 | 2005 |
| November | 11 | 2004 | February | 18 | 2005 | November | 03 | 2005 |
| November | 13 | 2004 | February | 19 | 2005 | November | 04 | 2005 |
| November | 27 | 2004 | February | 20 | 2005 | November | 07 | 2005 |

**ATTACHMENT A**

Significant Rain Events, Alliance Recycling, Inc. (Oakland)
February 2, 2002 – February 2, 2007

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| November | 08 | 2005 | February | 17 | 2006 | April | 09 | 2006 |
| November | 09 | 2005 | February | 04 | 2006 | April | 05 | 2006 |
| November | 25 | 2005 | February | 02 | 2006 | April | 03 | 2006 |
| November | 28 | 2005 | February | 26 | 2006 | April | 07 | 2006 |
| November | 29 | 2005 | February | 01 | 2006 | April | 04 | 2006 |
| December | 01 | 2005 | February | 27 | 2006 | April | 12 | 2006 |
| December | 02 | 2005 | February | 28 | 2006 | April | 02 | 2006 |
| December | 07 | 2005 | March | 29 | 2006 | April | 11 | 2006 |
| December | 17 | 2005 | March | 17 | 2006 | April | 16 | 2006 |
| December | 18 | 2005 | March | 21 | 2006 | May | 24 | 2006 |
| December | 19 | 2005 | March | 11 | 2006 | May | 19 | 2006 |
| December | 20 | 2005 | March | 13 | 2006 | May | 21 | 2006 |
| December | 21 | 2005 | March | 30 | 2006 | June | 28 | 2006 |
| December | 22 | 2005 | March | 04 | 2006 | July | 20 | 2006 |
| December | 25 | 2005 | March | 10 | 2006 | July | 06 | 2006 |
| December | 26 | 2005 | March | 28 | 2006 | July | 21 | 2006 |
| December | 27 | 2005 | March | 07 | 2006 | August | 02 | 2006 |
| December | 28 | 2005 | March | 01 | 2006 | October | 05 | 2006 |
| December | 29 | 2005 | March | 02 | 2006 | November | 2 | 2006 |
| December | 30 | 2005 | March | 09 | 2006 | November | 11 | 2006 |
| December | 31 | 2005 | March | 27 | 2006 | November | 13 | 2006 |
| January | 06 | 2006 | March | 12 | 2006 | November | 26 | 2006 |
| January | 08 | 2006 | March | 03 | 2006 | December | 8 | 2006 |
| January | 13 | 2006 | March | 16 | 2006 | December | 9 | 2006 |
| January | 21 | 2006 | March | 31 | 2006 | December | 10 | 2006 |
| January | 03 | 2006 | March | 06 | 2006 | December | 12 | 2006 |
| January | 18 | 2006 | March | 24 | 2006 | December | 13 | 2006 |
| January | 11 | 2006 | March | 14 | 2006 | December | 15 | 2006 |
| January | 27 | 2006 | March | 20 | 2006 | December | 21 | 2006 |
| January | 07 | 2006 | March | 25 | 2006 | December | 26 | 2006 |
| January | 01 | 2006 | March | 05 | 2006 | January | 3 | 2007 |
| January | 17 | 2006 | April | 01 | 2006 | January | 4 | 2007 |
| January | 30 | 2006 | April | 17 | 2006 | January | 27 | 2007 |
| January | 28 | 2006 | April | 15 | 2006 | January | 28 | 2007 |
| January | 02 | 2006 | April | 08 | 2006 | | | |
| January | 14 | 2006 | April | 10 | 2006 | | | |